In re Margaret Wilson DUKE, Debtor.

**PEOPLES BANK OF DICKSON,**
**Plaintiff/Appellant,**

v.

**Margaret Wilson DUKE,**
**Defendant/Appellee.**

No. 3:94–0433.

United States District Court,
M.D. Tennessee,
Nashville Division.

Sept. 15, 1994.

Kevin James Jones, Nashville, TN, for Peoples Bank of Dickson.

John R. Cheadle, Sr., Nashville, TN, for Margaret Wilson Duke.

## MEMORANDUM

WISEMAN, District Judge.

This bankruptcy appeal involves the nature of criminal restitution versus civil recovery and collateral estoppel with regard to the dischargeability of a debt incurred as a result of bank fraud. The Bankruptcy Court held that it could not order civil recovery because in a prior criminal hearing, the District Court had not imposed criminal restitution. For the following reasons, this Court reverses the judgment of the Bankruptcy Court and remands this case to that court for determination of the remaining amount of Ms. Duke's nondischargeable obligation to the Bank.

### STATEMENT OF THE CASE

Peoples Bank of Dickson (the "Bank") employed Margaret Wilson Duke from 1984 to 1989 as a cashier. During her employment, Ms. Duke made unauthorized and fraudulent transactions which obligated her to the Bank in the amount of $308,700, and the Bank filed criminal charges against Ms. Duke. Ms. Duke repaid $202,000 of her indebtedness from the sale of her home and other assets. She was bonded by Fidelity and Deposit Company ("FDC") who paid approximately $92,000 minus a $10,000 deductible to the Bank, thus leaving a total of $14,159 unpaid. On January 12, 1993, Ms. Duke filed Chapter 7 Bankruptcy. The Bank subsequently initiated an adversary proceeding by filing a complaint in the bankruptcy court on April 9, 1993 objecting to the dischargeability of Ms. Duke's debt.

In the February 8, 1993 criminal action in the District Court, Ms. Duke entered a plea of guilty to one count of bank fraud for obtaining funds from the Bank by false and fraudulent pretenses and representations. On June 21, 1993, the District Court held a criminal restitution hearing to determine whether Ms. Duke should be ordered to pay restitution to the Bank as part of the sentence imposed in connection with her guilty plea. At that time, Ms. Duke and her attor-

ney represented that she would not receive a discharge of the debt and that an agreement of nondischargeability had already been reached. The court ruled that Ms. Duke did not owe criminal restitution to the Bank.

On November 11, 1993, the Bank filed an amended motion for summary judgement in the bankruptcy court to have the debt declared nondischargeable. Ms.. Duke subsequently filed a cross summary judgment motion. After a hearing on the cross motions for summary judgment, the Bankruptcy Court relied in part on the transcript of the restitution hearing in the District Court and determined on March 14, 1994, that it was bound to the District Court's ruling that the Bank was not entitled to receive any additional restitution payments because of its interference with the sale of Ms. Duke's home.

■ The Bank has appealed from that order. The primary issue on appeal before this Court is whether the Bankruptcy Court erred in finding that the doctrine of collateral estoppel barred the Bank from pursuing its cause of action in this civil case because of the result of the restitution hearing in a criminal action when the Bank was not a party to that prior proceeding. The Bankruptcy Court should not have estopped the Bank from litigating its cause of action, including the dischargeability of the debt and the amount owed, for several reasons. First, the District Court did not make a determination that Ms. Duke had no civil obligation to the Bank. Next, the prerequisites for applying the doctrine of collateral estoppel are not present in this case. Finally, to estop the Bank from litigating this action denies the Bank the right to due process and is contrary to the public policies underlying the doctrine: it would be manifestly unfair to bind the Bank to the results in the District Court proceeding because the Bank was not a party and did not have the opportunity to litigate the issue in question. Therefore, this Court finds that the Bankruptcy Court erred in denying the plaintiff's motion for summary judgment, granting the defendant's cross-motion, and dismissing the plaintiff's complaint.

## CRIMINAL RESTITUTION VERSUS CIVIL RECOVERY

Restitution in a criminal proceeding is legally different from recovery in a civil suit for a debt arising out of a criminal activity. The United States Supreme Court has held that a defendant's obligation to pay criminal restitution is punitive in nature and is separate and apart from civil liability. *Kelly v. Robinson,* 479 U.S. 36, 52, 107 S.Ct. 353, 362, 93 L.Ed.2d 216 (1986) (holding that criminal restitution obligations constitute a "fine, penalty, or forfeiture" under § 523(a) of the Bankruptcy Code). In *Kelly,* the Court explained that these criminal restitution orders operate for the benefit of the state rather than as compensation to the victim, and they are part of a sentence designed to serve the penal and rehabilitative interests of the state following a criminal conviction. *Id.* The determination of criminal restitution is not meant to reach the issue of civil obligations. The restitution hearing in the District Court was for the purpose of determining Ms. Duke's criminal sentence, not to determine her civil debt.

## COLLATERAL ESTOPPEL

■ In general, the doctrine of collateral estoppel is a judicial creation that bars a party from raising an issue already litigated in a prior proceeding. *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed:2d 552 (1979).

### Due Process Rights

■ The United States Supreme Court has held, in a patent infringement case, that due process prohibits the application of collateral estoppel to a party who has never appeared in a prior action. *Blonder–Tongue Lab., Inc. v. University of Illinois Found.,* 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971). In that case, the Court examined the federal and state courts' evolution away from the doctrine of mutuality and discussed the public policies for abandoning this mutuality requirement. *Id.* at 317–27, 328–29, 91 S.Ct. at 1436–42, 1442–43. The Court focused on whether it should continue to "afford a litigant more than one full and fair opportunity for judicial resolution of the

same issue," expressing concern for overcrowded dockets and misallocation of resources by both parties to such a suit. *Id.* at 328–29, 91 S.Ct. at 1442–43. The Court concluded that even though the identical issue had been adjudicated previously, due process prohibited estopping those litigants, who never had appeared in a prior action, from litigating that issue because they had not had a chance to present their evidence or arguments on that claim. *Id.* at 329, 91 S.Ct. at 1443. Likewise, in this case, the Bankruptcy Court has denied the Bank its due process rights by denying the Bank the opportunity to litigate the pertinent issues in the bankruptcy proceeding.

### Underlying Purpose of Doctrine

■ The doctrine of collateral estoppel is a judicial creation that is meant to 1) protect parties from the burden of relitigating an identical issue with the same party or his privy and 2) promote judicial economy by preventing needless litigation. *Parklane,* 439 U.S. at 326, 99 S.Ct. at 649. In *Spilman v. Harley,* the Sixth Circuit explained that the doctrine "is applied to encourage the parties to present their best arguments on the issues in question in the first instance and thereby save judicial time." 656 F.2d 224, 228 (6th Cir.1981).

Estopping the Bank from pursuing its civil action in this case is contrary to the underlying purposes of the doctrine of collateral estoppel. The Bank has never had the opportunity to present its best arguments and litigate the issues of the dischargeability and amount of the debt owed them. Nor did the Bank have the opportunity to offer any rebuttal regarding the District Court's conclusion that they had interfered with Ms. Duke's sale of her home. Because the federal prosecutor did not rebut this claim, the District Court made the finding than the Bank did interfere with the sale of the real estate.

### Elements of Collateral Estoppel

■ The Sixth Circuit has set forth the elements that must be present for a prior judgment to have a collateral estoppel effect: the precise issue sought to be precluded must have been raised in the prior proceeding; the issue must actually have been litigated; and the determination in the prior action must have been necessary and essential to the judgment. *Spilman,* 656 F.2d at 228 (considering whether a bankruptcy judge must consider each question of dischargeability of a debt de novo or whether the parties are collaterally estopped by a prior judgment determining the nature of the debt). See also *Shelton v. Smith (In re Smith),* 37 B.R. 996, 998 (Bankr.M.D.Tenn.1984). The party asserting the estoppel has the burden of proving the requirements of estoppel have been met. *Spilman,* 656 F.2d at 229.

Ms. Duke has failed to show that the requirements necessary to apply collateral estoppel actually exist in this case. First, one of the issues sought to be precluded, the dischargeability of Ms. Duke's debt to the Bank, was not raised directly or litigated in the restitution hearing in the criminal action because the purpose of the hearing was to determine the appropriate amount of restitution in connection with Ms. Duke's guilty plea to a criminal charge of bank fraud. The dischargeability issue was mentioned but was not contested or litigated because Ms. Duke and her counsel represented, during the hearing, that the debt was not dischargeable and that the parties had reached an agreement to that effect. Thus, the court did not even consider whether her debt was dischargeable, and the determination of whether that debt was dischargeable was not necessary or essential to impose the judgment of restitution. Because the dischargeability question was not at issue in the criminal restitution hearing, the amount owed the Bank was not raised, except that Ms. Duke's counsel stated in his closing argument that the amount had yet to be determined. Finally, in the restitution hearing in the criminal case, Ms. Duke made the assertion that the Bank had interfered with the sale of her home, but because the Bank was not a party to that proceeding, it did not have the opportunity to litigate the issue fully or rebut that assertion. Nor did the prosecutor rebut the assertion. Furthermore, the determination of this issue was not necessary or essential to the judgment.

*Collateral Estoppel of Ms. Duke to Deny Nondischargeability of Debt*

The final question is whether Ms. Duke is judicially estopped to deny the non-dischargeability of debt because of the representation made in her criminal restitution hearing. Although the courts in this jurisdiction have not ruled directly on this issue, several courts in other jurisdictions have held that the doctrine of collateral estoppel does bar a party from asserting a legal position contrary to that asserted to its benefit in a prior judicial proceeding. *Oneida Motor Freight v. United Jersey Bank,* 848 F.2d 414, 419 (3rd Cir.1988); *In re Cassidy,* 892 F.2d 637, 641 (7th Cir.1990) (holding that the doctrine applies to assertions of law or fact and citing *Davis v. Wakelee,* 156 U.S. 680, 689, 15 S.Ct. 555, 558, 39 L.Ed. 578 (1895)). A party does not have to prevail on the merits in the first proceeding in order to be estopped from changing her position. *Edwards v. Aetna Life Ins. Co.,* 690 F.2d 595, 599 n. 5 (6th Cir.1982).

More generally, the Supreme Court has held that the use of collateral estoppel is appropriate in all defensive uses of collateral estoppel. See *Blonder–Tongue Laboratories, Inv. v. University of Illinois Foundation,* 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971); *Parklane,* 439 U.S. at 329–31, 99 S.Ct. at 650–51. The Court in *Blonder–Tongue* explained that a defensive use of collateral estoppel occurs when a defendant seeks to estop a plaintiff from asserting a claim that the plaintiff previously litigated and lost against another defendant. *Id.* at 329, 99 S.Ct. at 650. Use of the doctrine in such a situation precludes a plaintiff from relitigating identical issues by merely switching adversaries. In the interest of promoting judicial economy, the doctrine gives the plaintiff an incentive to join all potential defendants in the first action. *Id.* at 329–30, 99 S.Ct. at 650.

In this case, although the parties are aligned somewhat differently than the situation described in *Blonder–Tongue,* the principle is the same. The parties both indicated that they had reached an agreement that the debt was not dischargeable. In fact, Ms. Duke admitted in the criminal restitution hearing that the debt she owed was not dischargeable and that she intended to repay the debt. Now Ms. Duke seeks to assert a contrary legal position so that she may avoid civil recovery as well. This Court holds that she is collaterally estopped to deny the non-dischargeability of the debt to the Bank.

### CONCLUSION

The doctrine of collateral estoppel does not estop the Bank from pursuing recovery from the Debtor in the bankruptcy proceeding because the criminal restitution judgment does not affect the determination of civil obligations and collateral estoppel applies only to the Debtor in this case.

For the foregoing reasons, this Court REVERSES the Bankruptcy Court's decision not to grant summary judgment in favor of the Bank and REMANDS this case to the Bankruptcy Court for determination of the remaining amount of Ms. Duke's nondischargeable obligation to the Bank. An order in accord will be entered.